KERN'S KITCHEN, INC., et al., Plaintiffs,

v.

BON APPETIT, et al., Defendants.

No. C 84–1109–L(B).

United States District Court,
W.D. Kentucky,
Louisville Division.

May 26, 1987.

Robert A. Donald, III, Donald L. Cox, Louisville, Ky., Clifford W. Browning, Indianapolis, Ind., for plaintiffs.

K. Gregory Haynes, Louisville, Ky., Joan L. Kupersmith Larkin, Thomas Small, Los Angeles, Cal., for defendants.

## MEMORANDUM

BALLANTINE, District Judge.

On August 15, 1960, Leaudra C. Kern registered the mark DERBY–PIE with the Office of the Secretary of State of the Commonwealth of Kentucky and on October 7, 1969, registered the mark on the principal register of the United States Pat-

ent and Trademark Office.[1] Mrs. Kern's daughter, Mary Louise Kern Rupp, is the present owner, through inheritance, of the DERBY–PIE mark. Mrs. Rupp has licensed the use of the DERBY–PIE mark by Kern's Kitchen, Incorporated. Kern's Kitchen produces bakery products, including a chocolate-nut pie, bearing the DERBY–PIE mark.

In 1984 Mrs. Rupp and Kern's Kitchen brought suit alleging Bon Appetit, The Knapp Press and The Viking Press had "printed, published, and distributed in interstate commerce a cookbook entitled 'Favorite Restaurant Recipes', where at page 214 there purports to be a recipe for the closely guarded family trade secret recipe for DERBY–PIE." Plaintiffs, Mrs. Rupp and Kern's Kitchen, by their complaint as amended,[2] contend that the unauthorized use of the mark DERBY–PIE constitutes infringement under the Lanham Act, Title 15 U.S.C. § 1114(1) and KRS 365.615,[3] unfair competition (a false designation of origin or representation) under the Lanham Act, Title 15 U.S.C. § 1125(a) and KRS 365.560 et seq. and has resulted in libel and disparagement of the mark and dilution of its value under the law of Kentucky. Plaintiffs also accuse defendants of malicious prosecution and abuse of process. Plaintiffs seek injunctive relief and damages as authorized by Title 15 U.S.C. § 1116 and § 1117, KRS 365.620 and the common law of Kentucky. Plaintiffs aver and the Court concludes that it has jurisdiction of this controversy under Title 15 U.S.C. § 1121,[4] Title 28 U.S.C. §§ 1331, 1332 and 1338, as well as pendent and ancillary jurisdiction.

Defendants, Bon Appetit, The Knapp Press and The Viking Press, have moved the Court for summary judgment dismissing the complaint. Fed.R.Civ.P. 56. The basis for defendants' motion is that the mark DERBY–PIE is the generic or common descriptive term for a chocolate-nut pie and not appropriate for continued registration under the Lanham Act. Plaintiffs have responded to defendants' motion for summary judgment and tendered their motion for partial summary judgment holding DERBY–PIE is not the generic or common descriptive name for a type of pie.

A mark that is a common descriptive name is generic and "[g]eneric terms are not registrable, and a registered mark may be cancelled at any time on the grounds that it has become generic. See §§ 2, 14(c), 15 U.S.C. §§ 1052, 1064(c)." *Pay 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). The Lanham Act, at § 1119, "provides authority for the court to cancel those registrations of any party to an action involving a registered mark." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 13 (2d Cir.1976). The Court of Appeals for the Sixth Circuit has observed that "[s]ummary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles." *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 (6th Cir.1983). Though several motions are pending, the Court will treat this matter as submitted on the litigants' cross-motions for summary judgment.

■ Plaintiffs maintain that the DERBY–PIE mark has become "incontestable"

---

1. DERBY–PIE was assigned Kentucky Certificate of Service Mark/Trademark Assignment Certification No. 05478 and United States Trademark Office Registration No. 878,334.

2. No responsive pleading having been served, plaintiffs filed their amended complaint, pursuant to Fed.R.Civ.P. 15(a), on November 27, 1984.

3. In the third count of the amended complaint plaintiffs aver that the state trademark registration was renewed, pursuant to KRS 365.585, on

July 19, 1978, and is therefore valid and subject to infringement.

4. Title 15 U.S.C. § 1121 provides that:
The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

under Title 15 U.S.C. § 1065.[5] The Lanham Act provides that an incontestable registration "shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce...." Title 15 U.S.C. § 1115(b). But the incontestable status of a mark is subject to "any conditions or limitations stated [in § 1065]," see § 1115(b), or one of the seven grounds listed in § 1115(b)(1) to (7). A registered mark, which may be cancelled under § 1064(c) for having become "the common descriptive name of an article or substance," is expressly excepted in § 1065 from continuing incontestable; for "[n]o incontestable right shall be acquired in a mark which is the common descriptive name of any article...." § 1065(4). "A registered mark is to be cancelled if it has become 'the common descriptive name of an article,' 15 U.S.C. § 1064(c), and no incontestable right can be acquired in such a mark. 15 U.S.C. § 1065(4)." *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th Cir.1982); see *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir.1976) (discussion of effect of incontestability in infringement action).

■ Incontestability will not shield a mark from a court's consideration. A mark is, however, by virtue of its registration entitled to a presumption of validity. Registration under the Lanham Act, "shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods specified in the certificate...." Title 15 U.S.C. § 1057(b). The Court of Appeals for the Eighth Circuit has held that "[t]he presumption created by the Lanham Act is a rebuttable one ... which shifts the burden of proof to the one questioning the trademark...." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir.1984). The statutory presumption of validity may be overcome, however, "by establishing the generic nature of the mark," *Id.* at 1326, by a preponderance of

the evidence. *Anti-Monopoly*, 684 F.2d at 1319.

■ In *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), the Court of Appeals for the Seventh Circuit said, "[a] term for which trademark protection is claimed will fit somewhere in the spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful," and that "[a] generic or common descriptive term is one which is commonly used as the name or description of a kind of good." The Sixth Circuit adopted the *Miller* categorizations in *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984). A term that is generic cannot be a trademark under any circumstances. *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1014 (9th Cir.1979).

"The classic test for whether a trademark has become generic was enunciated 60 years ago by Judge Learned Hand," S.REP. No. 627, 98th Cong., 2d Sess. 5, *reprinted in* 1984 U.S.Code Cong. & Ad. News 5708, 5719. In *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921), Judge Hand concluded:

> The single question, as I view it, in all these cases, is merely one of fact: What do the buyers understand by the word for whose use the parties are contending? ... [H]ere the question is whether the buyers merely understood that the word "Aspirin" meant this kind of drug, or it meant that and more than that; i.e., that it came from the same single, though, if one please anonymous, source from which they had got it before.

"How a particular word has been used and how it has been understood by the public," whether the word is to be categorized as generic or common descriptive, "is a question of fact." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325–26 (8th Cir.1984).

The burden is on defendants to show, by a preponderance of the evidence, that the primary significance to the consuming public of the term "derby pie" is as the name

---

**5.** In December 1974 plaintiffs filed a combined affidavit, required under sections 8 and 15, with the United States Patent and Trademark Office to secure § 1065 incontestability.

for a type of pie and not to identify a source, anonymous or known, for a product. To satisfy their burden, defendants have submitted in evidence numerous affidavits evincing generic use of the term "derby pie" by restaurants, newspapers, magazine and book publishers and the general public. To determine if defendants have produced sufficient evidence to overcome the statutory presumption and shown that "derby pie" is a common descriptive or generic term, the Court must consider the quality and the quantity of the evidence produced.

■ In a case of this type "[e]vidence of the public's understanding of the term can be obtained from any competent source such as consumer surveys, dictionaries, newspapers and other publications." *In Re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed.Cir.1985). While direct evidence, i.e., a consumer survey, is better, indirect evidence in the form of newspapers and other publications can be useful in determining the consuming public's use of a particular term. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 375 (1st Cir.1980). Defendant has not submitted consumer surveys but has provided other direct evidence of use by the public of the term "derby pie" as well as indirect evidence culled from various publications.

Defendant received, in response to a request for recipes for "derby pie" appearing in the September 1986 issue of the *Rural Kentuckian,* recipes from 15 persons, 14 living in Kentucky and 1 in California.[6] These recipes for a chocolate-nut pie are attached as exhibits to the April 16, 1987 affidavit of Jana Prochazka. Defendant has also provided the testimony of 5 persons, Evelyn Shoulders, Roma Barger, Gertie Geurin, Terry Clarke and Lyla Fuller, who claim they have baked a chocolate-nut pie called "derby pie" or "derby pie" preceded by an identification of source. Of these persons 4 are from Kentucky and the fifth, Ms. Fuller, from Utah.

Defendant has submitted, by affidavit, the names of some 20 restaurants, stores and shops in 8 states (Florida, Georgia, Kentucky, New York, North Carolina, Ohio, South Carolina and Tennessee) and the District of Columbia, that serve a "derby pie" or a "derby pie" with identification of source in the name. As further evidence of the consuming public's generic use of the term, defendants have submitted by affidavit that recipes for a chocolate-nut pie called "derby pie", "Kentucky derby pie", or the like appear in approximately 132 cookbooks, 23 newspapers and 10 magazine articles.

■ Many of the cookbooks were published by civic and charitable organizations. Plaintiff argues that these cookbooks are not of much help here because of their presumably limited circulation. The extent of the circulation of a publication containing the registered term is not, however, indicative of the general public's perception of the term. The Court is of the opinion that the cookbooks introduced here and published by civic and charitable organizations are particularly probative since most of the recipes are contributed by individuals and therefore may best be likened to direct evidence. Defendants' evidence that Atlanta Gas Light Company of Atlanta, Georgia, sent a recipe for "derby pie" in an annual calendar to approximately 50,000 customers is of no greater value because of the number of persons who might have received it. While the number of persons receiving a publication containing a trademark may explain how a trademark became generic, it does not prove that the term is generic.

■ Defendants have also included, in support of their motion, cookbook references to various dishes with the word "derby" in the names. Reference is made to items such as derby cheese, eggs derby, and poulard derby. The Court agrees with plain-

---

**6.** The request for "derby pie" recipes appearing in the September 1986 issue of the *Rural Kentuckian,* asked that any recipes be sent to Jana Prochazka. By her affidavit filed April 16, 1987, Ms. Prochazka states that she did not submit the recipe request to the *Rural Kentuckian.* Whether defendants' agent did or did not request this information would not affect the admissibility of this evidence.

tiff that this type of evidence is irrelevant and does not evince that "derby pie" is the generic name for a pie.

Plaintiffs have submitted a copy of what they call "Kern's Kitchen Trademark Policing File." This file contains correspondence between Kern's Kitchen and various restaurants, a newspaper and other businesses employing the term "derby pie." Though in other circumstances this evidence could indicate that the mark had not been abandoned, in this instance plaintiff's cease and desist correspondence is additional proof of third-party use of DERBY–PIE as a generic term. See *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983).

■ Plaintiffs maintain that they have taken steps to educate the public, through advertising, newspaper interviews and other means, that DERBY–PIE is a registered trademark. In similar circumstances, after concluding that "cellophane" was generic, the Court of Appeals for the Second Circuit has held that, "[i]t ... makes no difference what efforts or money the DuPont Company expended in order to persuade the public that 'cellophane' means an article of Du-Pont manufacture. So far as it did not succeed in actually converting the world to its gospel it can have no relief." *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 81 (2d Cir.1936). The same logic will apply with regard to plaintiffs' efforts to preserve the integrity of the DERBY–PIE mark.

■ In the memorandum accompanying their motion for partial summary judgment, plaintiffs argue that the lack of a dictionary definition for DERBY–PIE is proof that the mark is not generic. But, while inclusion of a term in a dictionary "is evidence of the ordinary meaning of the word and indicates at least some degree of usage by the public," the question of "[w]hether a term is generic is determined by actual usage." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1327–28 (8th Cir.1984).

Plaintiffs have offered the expert testimony, by affidavit, of James R. Higgins, Jr., a local attorney who concentrates his practice in intellectual property law, and has opined that the DERBY–PIE mark is not generic. Defendants object to Mr. Higgins's testimony on several grounds, including that Mr. Higgins was formerly associated with defendants' counsel's firm during the pendency of this action and at that time, by his own admission, had a conversation with an associate of his former firm concerning this case. While the Court is distressed that Mr. Higgins and plaintiffs' attorney believe that Mr. Higgins's testimony is appropriate in these circumstances, the Court will not exclude this evidence on the ground that it is barred by the Code of Professional Responsibility. Instead, the Court will exclude Mr. Higgins's testimony since it is only intended to instruct as to the applicable trademark law—the Court does not need Mr. Higgins's assistance in this regard. Since expert testimony is only necessary if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," Rule 702, Federal Rules of Evidence, Mr. Higgins's testimony will not be considered.

■ Plaintiffs have failed to produce evidence of their own which would tend to contradict defendants' evidence that "derby pie" is a generic term for a type of pie. The mark DERBY–PIE is generic and will be ordered cancelled from federal and state trademark registration under Title 15 U.S.C. § 1119 and KRS 365.600(5).[7]

■ Plaintiffs have alleged that defendants' use of the term "derby pie" is a false designation of origin or a false representation amounting to unfair competition under Title 15 U.S.C. § 1125 and KRS 365.060. The Court having concluded that the term is generic, however, plaintiffs' claim of unfair competition must fail as "generic and merely descriptive marks are not entitled to trademark protection...." *Metric & Multistandard Components Corp. v. Metrics, Inc.*, 635 F.2d 710, 714 (8th Cir.1980);

---

**7.** Under KRS 365.600(5) the Secretary of State shall cancel a registration from the register "[w]hen a court of competent jurisdiction shall

order cancellation of a registration on any ground."

*Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7–8 n. 2 (1st Cir.1981) (cases cited). Though an exception has been recognized, "[e]ven a generic mark may be entitled to protection from unfair competition if the mark is 'so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source,'" *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1331 n. 5 (8th Cir.1984), that exception will not apply here. Plaintiffs have produced no evidence that would indicate confusion of the public by defendants' use of the term "derby pie".

▮ Plaintiffs plead a common law cause of action for trademark dilution. There is no basis though for such an action in the Lanham Act or the common or statutory law of Kentucky; "[t]rademark dilution ... is exclusively a creature of state statute and there is no provision in the Lanham Act." *Anheuser-Busch, Inc. v. Florists Ass'n of Greater Cleveland, Inc.*, 603 F.Supp. 35, 39 (N.D.Ohio 1984). Neither can the Court find that the Kentucky courts would recognize a cause of action for libel or disparagement of trademark. Plaintiffs' claims of trademark dilution, libel and disparagement will be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

The final count of the amended complaint accuses defendants, Bon Appetit and Knapp Press, of malicious prosecution and abuse of process for filing an action for declaratory judgment cancelling the mark DERBY–PIE in a federal district court in California. The suit was filed on August 24, 1984 and dismissed for lack of personal jurisdiction over defendant therein, Kern's Kitchens, on October 31, 1984. Plaintiffs contend that this action was brought maliciously and without probable cause for the sole purpose of harassing Kern's Kitchens.

▮ In *Raine v. Drasin*, Ky., 621 S.W.2d 895 (1981), the Supreme Court of Kentucky set out the prerequisites to the maintenance of an action for malicious prosecution and abuse of process. An essential element to making out a malicious prosecution and abuse of process claim is the lack of probable cause. See *Id.* at 899; *Flynn v. Songer*, Ky.App., 399 S.W.2d 491, 493 (1966). Bon Appetit and the Knapp Press, on notice that their use of the term "derby pie" might result in liability for infringement of a registered mark, had probable cause to bring an action for cancellation of the registration. Plaintiffs' claims of malicious prosecution and abuse of process will be dismissed.

Defendants have asked the Court for an award of attorney fees pursuant to Title 15 U.S.C. § 1117(a) which provides, *inter alia*, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." While the Court of Appeals for the Sixth Circuit has not explained what would qualify a case as "exceptional" within the purview of § 1117, see *WSM, Inc. v. Wheeler Media Services, Inc.*, 810 F.2d 113 (6th Cir.1987), it has considered the question elsewhere.

▮ The Patent Act, at Title 35 U.S.C. § 285, provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The language of § 285 is identical to the attorney fee provision of § 1117. Construing § 285, the Court of Appeals has interpreted "exceptional" to mean an award of attorney fees in patent cases is authorized only in circumstances where there is "a showing of conduct which is unfair, in bad faith, inequitable, or unconscionable." *Eltra Corp. v. Basic, Inc.*, 599 F.2d 745, 758 (6th Cir.1979). This Court believes that this standard should apply in the context of a trademark case.[8] Plaintiff brought this

---

**8.** After reviewing the legislative history, the Court of Appeals for the Seventh Circuit has reached the same conclusion regarding the construction of § 1117:

Exceptional cases that would justify an award of attorney's fees are ones in which the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful. H.R. Rep. No. 93–524, 93d Cong. 1st Sess., 2 (1973); S.Rep. No. 93–1400, 93d Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7132, 7133. Prevailing defendants may also recover attorney's fees in exceptional cases. *Id.*, U.S.Code Cong. & Ad.News at 7136.

suit for infringement of a then registered mark; the circumstances cannot be considered exceptional under § 1117(a).

Defendants' motion for an award of attorneys fees will be denied.

### ORDER

For the reasons set forth in the memorandum filed this date,

IT IS ORDERED that the motion of defendants, Bon Appetit, The Knapp Press and The Viking Press, for summary judgment dismissing plaintiffs' claims against them for federal and state trademark infringement, unfair competition, malicious prosecution and abuse of process, be and it hereby is granted;

IT IS FURTHER ORDERED that plaintiffs' claims of trademark dilution, libel and disparagement, be dismissed for failure to state a claim upon which relief can be granted;

IT IS FURTHER ORDERED that defendants' motion for attorney fees be and hereby is denied; and

IT IS FURTHER ORDERED that plaintiffs' federal and state registrations of the mark DERBY–PIE be cancelled.

There is no just reason for delay, and this is a final and appealable order.

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,*     754 F.2d 738, 746 (7th Cir.1985).