Alfred A. BARRIOS, Ph.D., dba SPC Center, SPC Press, and Self–Programmed Control Center, Plaintiff,

v.

AMERICAN THERMAL INSTRUMENTS, INC., Defendant.

No. C–3–85–619.

United States District Court, S.D. Ohio, W.D.

June 30, 1988.

Thomas M. Pyper, Dayton, Ohio, and Eliot G. Disner and Andra M. Finkel, Los Angeles, Cal., for plaintiff.

B. Joseph Schaeff and Michael W. Krumholtz, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE MOTION OF THE PLAINTIFF, ALFRED A. BARRIOS, Ph.D., FOR PARTIAL SUMMARY JUDGMENT (DOC. # 21)

RICE, District Judge.

This case is before the Court on the Motion of the Plaintiff, Alfred A. Barrios, Ph.D., for Partial Summary Judgment (Doc. # 21). For the reasons set forth below, Plaintiff's motion is sustained in part and overruled in part.

The Plaintiff, Alfred A. Barrios, Ph.D., has brought this action against the Defendant, American Thermal Instruments, Inc., (ATI), pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332, 1338. Plaintiff's Complaint (Doc. # 1) sets forth five claims for relief against the Defendant. However, the Motion for Partial Summary Judgment currently before the Court relates only to Count III of Plaintiff's Complaint.

In Count III, Plaintiff asserts that Defendant has infringed upon certain common-law trademarks allegedly held by the Plaintiff. The Plaintiff alleges that in or before 1973, Plaintiff developed a stress control program known as "Self–Programmed Control." (Doc. # 1, ¶ 7). As part of this program, Plaintiff created and marketed a card which purports to indicate the stress levels of its user (Doc. # 1, ¶¶ 7–8). Plaintiff asserts that in the course of marketing his stress card and other related products, Plaintiff acquired certain common-law trademarks. Count III alleges that "[p]rior to April 1, 1985, Barrios acquired common-law trademarks in Ohio as to the tab design mark, 'Stress Card,' 'Stress Card Biofeedback Card' [and] 'Biofeedback Card,' ... by adoption and actual use." (Doc. # 1, ¶ 33). Plaintiff further asserts that prior to April 1, 1985, he also acquired common-law trademarks in Ohio as to "the trade dress comprising a diagonal corner of any color with a four color band thereunder (the 'trade dress').... [and] the logo consisting of black, red, green, and blue rectangles juxtapositioned in a band (the 'band logo')." (Doc. # 1, ¶¶ 8, 33).

Plaintiff further asserts that "[w]ith full knowledge of Barrios' rights to these Marks and without his consent, Defendant has manufactured and sold in the State of Ohio and in other places articles which infringe Barrios' trademarks...." (Doc. # 1, ¶ 35). Specifically, Plaintiff claims that 200,000 infringing stress cards were manufactured by Defendant and sold to Abril Cultural in Sao Paulo, Brazil (Doc. # 1, ¶ 36). In Count III, Plaintiff alleges that "Defendant's conduct constitutes a deceptive trade practice in violation of O.R.C. Section 4165.02." (Doc. # 1, ¶ 39). The allegations contained within Count III are also sufficient to make out a federal claim under the Lanham Trade–Mark Act, § 43(a), 15 U.S.C. § 1125(a).

In his Motion for Partial Summary Judgment made pursuant to Fed.R.Civ.P. 56(c), Plaintiff "moves this Court for partial summary judgment ... on the issue of defendant's liability for infringement of three of plaintiff's trademarks: (a) 'STRESS CONTROL BIOFEEDBACK CARD'; (b) 'the trade dress consisting of diagonal corner of any color with a four color band thereunder'; and (c) 'the logo consisting of black, red, green and blue rectangles interposed in a band.'" (Doc. # 21, at 1). Plaintiff argues that there is no genuine issue of material fact concerning Defendant's infringement of said trademarks as the card manufactured by Defendant and distributed in Brazil (hereinafter referred to as the "red card") creates a likelihood of confusion as to its origin. (Doc. # 21, at 1).

## I. DISCUSSION

### A. *The Propriety of Summary Judgment Under Fed.R.Civ.P. 56(c)*

Before examining Plaintiff Barrios' specific allegations, the Court notes that the

United States Supreme Court has set forth specific standards with regard to the propriety of a motion for summary judgment made under Fed.R.Civ.P. 56(c), to wit:

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ... One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). With respect to the specific type of claim currently before the Court, the Sixth Circuit has held that "[s]ummary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles." *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1086 (6th Cir.1983) (*citing Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494 (2d Cir.1962); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.*, 398 F.2d 637 (5th Cir.1968)).

Based upon the foregoing, the Court concludes that partial summary judgment may be awarded in the case at bar if (and *only* if) no genuine issues of material fact are in existence.

Rule 53(c) places the burden of establishing that there are no genuine issues of material fact upon the moving party, to

wit: the Plaintiff. *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir.1976). The burden is also upon the moving party to establish that he is entitled to judgment as a matter of law. *Id.* However, once "the initial burden has been supported by additional materials, the non-moving party must then come forward with specific facts which demonstrate to the court that there is a genuine issue for trial." *Id.* at 1134–35. *See also Federal Deposit Ins. Corp. v. Seymour*, No. 84–1137, slip op. at 5–6 (6th Cir.1985) [779 F.2d 50 (table)].

### B. *The Applicable Law*

Plaintiff is basically asserting that Defendant's red card is so similar to Plaintiff's stress control biofeedback card (the "Barrios card") that a likelihood of confusion as to the red card's origin is created. Such confusion is prohibited by both Ohio's state deceptive practices statutes[1] and the federal Lanham Trade Mark Act, § 43(a), 15 U.S.C.A. § 1125(a).[2] Because both the Ohio Deceptive Trade Practices statutes and the Lanham Act focus upon confusion as to origin "the analyses to be applied by the courts in regard to these bases of relief are essentially the same...." *See Jewel Cos., Inc. v. Westhall Co.*, 413 F.Supp. 994, 999 (N.D.Ohio 1976) (*citing Mr. Gasket Co. v. Travis*, 35 Ohio App.2d 65, 299 N.E.2d 906 (1973), *aff'd*, 575 F.2d 1176 (6th Cir. 1978); *Younker v. Nationwide Mutual Insurance Co.*, 175 Ohio St. 1, 191 N.E.2d 145 (1963)). *See also Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 963 (6th Cir.1987). As a result, with one exception which will be discussed

---

1. Section 4165.02(B) of the Ohio Revised Code states "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: ... Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services...."

2. Section 1125(a) of Title 15 of the United States Code Annotated states:

   (a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to

describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

later, this Court will not differentiate between Ohio law and federal law.

"The touchstone of trademark law is the 'likelihood of confusion.'" *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir.1987). "[L]ikelihood of confusion is a question of law and thus an appropriate issue for summary judgment." *See WSM, Inc.*, 709 F.2d at 1086. However, "[t]he legal conclusion that confusion is likely must rest on the particular facts of the case...." *Id.* The Sixth Circuit has set forth eight foundational factors which are to be weighed in deciding upon whether a likelihood of confusion exists. *Little Caesar Enters., Inc.*, at 570–71. The eight factors to be considered "are factual and subject to a clearly erroneous standard of review ..." *Id.* (quoting *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir.1983)).

The eight foundational factors adopted by the Sixth Circuit in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982), are these:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

*Little Caesar Enters., Inc.*, at 570–71. However, before the Court can even reach the issue of confusion, certain preliminary requirements must be met.

### C. *Preliminary Requirements*

As previously noted, the first factor to be considered in making a determination as to whether there is a likelihood of confusion is the strength of the Plaintiff's mark. A key consideration with regard to the strength of a particular mark is the category into which it falls. "A term for which trademark protection is claimed will fit somewhere in the spectrum which ranges from (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful." *INDUCT–O–MATIC Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984) (quoting *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978)). "[G]eneric terms, have no trademark significance and therefore are not entitled to protection." *Sir Speedy, Inc. v. Speedy Printing Centers, Inc.*, 746 F.2d 1479 (6th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1195, 84 L.Ed.2d 341 (1985). Thus, if a term is found to be generic, a court need not even reach the issue of the likelihood of confusion for no trademark protection exists.

### 1. The "Stress Control Biofeedback Card"

In its response to Plaintiff's Motion for Partial Summary Judgment, Defendant asserts that there are genuine issues of material fact as to whether Plaintiff's alleged mark, "stress control biofeedback card" is generic (Doc. #23, at 6). Plaintiff asserts that he has established that his mark is distinctive, not generic (Doc. #27, at 4).

"A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods." *INDUCT–O–MATIC Corp.*, 747 F.2d at 362. "Representatives of this group are "aspirin", "cellophane", and "cola". *Sir Speedy, Inc. v. Speedy Printing Centers, Inc.*, 746 F.2d 1479 (6th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1195, 84 L.Ed.2d 341 (1985). "While direct evidence, i.e., a consumer survey, is better, indirect evidence in the form of newspapers and other publications can be useful in determining the consuming public's use of a particular term." *Kern's Kitchen, Inc. v. Bon Appetit*, 669 F.Supp. 786, 790 (W.D. Ky.1987). Dictionaries, newspapers and other publications may be used to establish that a term is indeed generic. *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed.Cir.1985).

Defendant bases its argument that the term "stress control biofeedback card" is generic upon the definition of the words

"stress", "control", "biofeedback", and "card" (Doc. # 23, at 5–6). Defendant also makes a rather vague reference to "the papers placed in the record by Plaintiff, particularly the advertising literature of Plaintiff and its licensee Pilgrin...." (Doc. # 23, at 6).

■ The phrase "stress control biofeedback card" is *not* generic. The Court concludes that there is no genuine issue of material fact as to this fact. Based upon the evidence in the record, reasonable minds could not differ as to this conclusion. *First,* the Court notes that "dissecting marks often leads to error. Words which could not individually become a trademark can do so when taken together." *Union Carbide Corp. v. Ever–Ready, Inc.,* 531 F.2d 366, 379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). *Second,* the Court notes that it is important to differentiate between a mark which is generic (a *common* descriptive term) and a mark which is merely descriptive. Defendant presented no evidence whatsoever that would indicate that the consuming public commonly uses or recognizes "stress control biofeedback card" as the name for the type of device which Plaintiff and Defendant are marketing.

■ In order for a term to be generic, it must be established that the term is more than merely descriptive. For example, a firm could market a clock which it refers to as the "tell time". The phrase, "tell time", is certainly descriptive as could be established by defining "tell" and defining "time". However, since no one ever refers to a clock as a "tell time", the phrase could not be termed generic. The same is true in the case at bar. When the phrase "stress control biofeedback card" is broken down into its component parts and each word is defined, the descriptive nature of the term becomes apparent. However, the Defendant has failed to produce evidence to the effect that the phrase, "stress control biofeedback card," is commonly used to describe a particular genus of goods. *See generally Liquid Controls, Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986).

■ In the alternative, Defendant argues that if not generic, Plaintiff's alleged mark is merely descriptive (Doc. # 23, at 6). "A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i.e.,* becoming 'distinctive of the applicant's goods'..., become a valid trademark." *INDUCT–O–MATIC Corp.,* 747 F.2d at 362 (*quoting Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 79 (7th Cir.1977) *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978)). Terms such as " 'Sudsy' ammonia, 'Best' paper, and 'Tasty' bread are descriptive terms." *Sir Speedy, Inc. v. Speedy Printing Centers, Inc.,* 746 F.2d 1479 (6th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1195, 84 L.Ed.2d 341 (1985). If a mark is descriptive, "proof of secondary meaning, i.e., public association of the product or service solely with the party seeking exclusive use of the word, [must be established] before the term is accorded protective status." *Id.* Thus, the Court must determine whether a genuine issue of material fact exists with regard to the descriptive nature of the term "stress control biofeedback card".

The Court *first* notes that Plaintiff himself argues that, "while Plaintiff's mark is perhaps descriptive, it is not generic. Since it is, *at least,* descriptive, it is incumbent on Plaintiff to show the secondary meaning thereof...." (Doc. # 27, at 5) (emphasis added). Thus, Plaintiff seemingly admits to the descriptive nature of the mark "stress control biofeedback card".

■ *Second,* the Court recognizes that the definitions of the words "stress", "control", "biofeedback", and "card" *do* describe the function and characteristics of the card. While as the Court previously noted, common usage of a term cannot be established by looking to the definitions of component words, such definitions can be considered in determining whether the term as a whole is descriptive. *See Liquid Controls, Corp.,* 802 F.2d at 938.

■ Based upon the foregoing, the Court concludes that there is no genuine

issue of material fact with respect to the fact that the term "stress control biofeedback card" *is* descriptive. Said term quite simply explains what the card does, to wit: its use. Accordingly, the Court concludes that before the Court can even reach the issue of the likelihood of confusion with regard to the term "stress control biofeedback card", Plaintiff must establish that there are no genuine issues of material fact with respect to the existence of secondary meaning.

**2. The "Trade Dress" and "Band Logo"**

■ Like a term which is descriptive, absent the existence of a secondary meaning, a trade dress lacks the protected status of a trademark. *See Kwik-Site Corp. v. Clear View Mfg. Co.*, 758 F.2d 167, 178 (6th Cir.1985). Thus, before this Court can reach the issue of whether there is a likelihood of confusion with regard to the "trade dress" and "band logo", Plaintiff must establish that there are no genuine issues of material fact as to whether said marks have obtained secondary meaning.

**3. Secondary Meaning**

Plaintiff asserts that he has established proof of the secondary meaning of the term "stress control biofeedback card", the trade dress, and the band logo (Doc. # 27, at 5). "The basic element of secondary meaning is a mental recognition in the minds of buyers and potential buyers that the product or service connected with the symbol or device originates from or is associated with the same source." *Sir Speedy, Inc. v. Speedy Printing Centers, Inc.*, 746 F.2d 1479 (6th Cir.1984), *cert. denied*, 469

U.S. 1217, 105 S.Ct. 1195, 84 L.Ed.2d 341 (1985). "The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed toward the consumer's attitude about the mark in question: Does it denote to him or her "a single thing coming from a single source?'" *Id.* (*quoting American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 12 (5th Cir.1974)). Many types of evidence may be used to establish secondary meaning including: "customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, number of sales, the amount, nature and geographical scope of advertising, the period of time during which the mark has been used, the number of customers, and actual confusion." *Id.* (*quoting American Scientific Chemical, Inc. v. American Hospital Supply Corp.*, 690 F.2d 791, 793 (9th Cir.1982)).

■ Based upon the evidence on the record, the Court concludes that there is no genuine issue of material fact with regard to the fact that the term, "stress control biofeedback card", has obtained a secondary meaning. Plaintiff has submitted numerous letters from consumers requesting and/or praising the "stress control biofeedback card" *by name* (Doc. # 21, Barrios declaration, Exh. 5). Further, it is undisputed that Plaintiff engaged in extensive advertising during the period from 1981 through 1985 (Doc. # 27, Barrios declaration, ¶ 4).[3] There is also evidence to the effect that Dr. Barrios and the Barrios card have received extensive media coverage.[4] Plaintiff's advertising has apparently been quite successful for in 1985 alone Four Million One Hundred Thousand Barrios

---

**3.** Advertising expenditures for 1981 totaled Five Thousand Two Hundred Dollars ($5,200); for 1982 totaled Five Thousand Two Hundred Dollars ($5,200); for 1983 totaled Twenty One Thousand Five Hundred Dollars ($21,500); for 1984 totaled One Hundred Thirty-four Thousand Dollars ($134,000); and for 1985 totaled Two Hundred and Nine Thousand Dollars ($209,000). (Doc. # 27, Barrios declaration, ¶ 4).

**4.** Plaintiff testifies that he appeared on CNN-TV and displayed the Barrios card (Doc. # 21, Barrios declaration, ¶ 11). Further, it is undisputed

that articles about Dr. Barrios and his product "have appeared in internationally distributed magazines and newspapers, including *Entrepreneur, Mademoiselle, Esquire, TV Guide, The Los Angeles Times, The San Diego Tribune,* and *USA Today...*." (Doc. # 21, Barrios declaration, ¶ 11). Many of these articles feature a photograph of Dr. Barrios displaying the Barrios card (Doc. # 21, Barrios declaration, ¶ 11). In support of his claim, Plaintiff has submitted copies of numerous articles featuring the Barrios card (Doc. # 21, Barrios declaration, Exh. 4).

cards were sold.[5] (Doc. # 27, Barrios declaration, ¶ 4). The Court realizes that it is difficult to establish a negative proposition, but notes that Defendant provided *no* evidence to the effect that a secondary meaning does *not* exist. Plaintiff met his initial burden of establishing the absence of a genuine issue of material fact. Defendant has failed to set forth any facts which indicate that such an issue does exist. Based upon the foregoing, the Court concludes that a reasonable juror could reach but one conclusion: the term "stress control biofeedback" has acquired secondary meaning.

■ The Court further concludes that no genuine issue of material fact exists with regard to the fact that the trade dress and band logo have acquired a secondary meaning. All of the evidence discussed above with regard to the sales, advertising, and media coverage of the Barrios card is pertinent to the question of whether the trade dress and band logo have acquired secondary meaning. There is evidence that Dr. Barrios has invested large amounts in advertising and received widespread media coverage (Doc. # 21, Barrios declaration, ¶ 11). Photos of the card were prominently displayed in many of the articles and most, if not all, of the advertising, contained pictures of the Barrios card. More than 5 million cards have been sold (Doc. # 21, Barrios declaration, ¶ 9). Based upon the foregoing, the Court concludes that a reasonable juror would come to the conclusion that consumers *do* associate the trade dress and band logo with Dr. Barrios and his products.

## D. *The Likelihood of Confusion*

Having concluded that the term "stress control biofeedback card," the trade dress, and the band logo have acquired secondary meaning, the Court must now consider whether the sale of the red card creates a likelihood of confusion as to the red card's origin. As discussed previously, in so doing, the Court must balance the "(1) strength of the plaintiff's mark; (2) relat-

edness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) [and the] likelihood of expansion of the product lines." *See Little Caesar Enters.,* at 570–71.

### 1. The Strength of Plaintiff's Marks

■ The Court concludes that there is no genuine issue of material fact as to the strength of Plaintiff's marks. Plaintiff's marks are fairly weak. As previously discussed, the phrase, "stress control biofeedback card", is descriptive in nature. Descriptive marks are considered to be weaker than other types of marks. *Little Caesar Enters., Inc.,* at 571. "[C]onfusion is said to be less likely where weak marks are involved." *Id.* Thus, the relative weakness of Plaintiff's mark favors the Defendant by a finding that there is little likelihood of confusion.

### 2. Relatedness of the Marks

The Court further concludes that there is no genuine issue of material fact with regard to the fact that the goods in this case *are* closely related. Both the red card and the Barrios card purport to measure stress. The same method of stress measurement is employed by both cards. Clearly, the only conclusion which reasonable minds could reach is that the goods are virtually identical. This factor indicates that the likelihood of confusion as to the origin of the red card is strong.

### 3. Similarity of the Marks

Plaintiff's marks and those used by Defendant on the red card *are* quite similar. As to this point, there is no genuine issue of material fact. In fact, the two cards are so similar that it is easier to enumerate their differences than it is to enumerate all of their similarities. The Barrios card's trade dress consists of a *blue* diagonal corner with a four color band thereunder, while the red card's trade dress consists of a *red* diagonal corner with a four color

---

**5.** Sales totaled 3,000 units in 1981; 25,000 units in 1982; 211,000 units in 1983; and 1,800,000 units in 1984 (Doc. # 27, Barrios declaration, ¶ 4).

band thereunder. The Barrios card displays the words "the stress *control* biofeedback card" upon its trade dress, while the red card displays the words "stress *card* biofeedback card" upon its trade dress. The words "stress control" are printed upon the Barrios card in large white print and the words "biofeedback card" are printed in small *white* print. The words "stress card" are printed upon the red card in large white print while the words "biofeedback card" are printed upon the card in small *black* print.

It is important to note that "[i]nfringers rarely make absolutely identical copies, and a side-by-side comparison is not the test. *Owens–Illinois Glass Co. v. Clevite Corp.,* 324 F.2d 1010, 51 Cust. & Pat.App. 815 (1963). It is sufficient when, as here, one having a general recollection of … [a] mark would be likely on encountering … [another mark] to assume that both emanate from the same source or connected sources." *WSM, Inc.,* 709 F.2d at 1087. The key question at this point is whether there is a genuine issue of material fact as to whether one having a general recollection of Plaintiff's marks would be likely to conclude that the red card emanated from Dr. Barrios.

A comparison of the Barrios card and the red card indicates that a reasonable person could only conclude that one having a general recollection of Plaintiff's marks would be likely on encountering the red card to assume that said card emanates from Dr. Barrios. The arrangement of the marks upon the card is identical. The trade dress is virtually identical (with the exception of the difference in color). The band logos *are* identical. Both cards are identified as stress biofeedback cards. Based upon the foregoing, the Court concludes that the marks displayed upon the cards are so similar that the likelihood of confusion as to the source of the red card is great.

#### 4. Evidence of Actual Confusion

There is some (albeit rather limited) evidence of actual confusion. According to Dr. Barrios, his exclusive licensee, Mr. Andrade, saw one of Defendant's red cards in Brazil and was concerned enough about its origin to question Dr. Barrios as to whether some other licensee was importing the Barrios card to Brazil (Doc. # 21, Barrios declaration, ¶ 14).[6] However, the Court concludes that there are genuine issues of material fact with regard to the question of actual confusion. A reasonable juror could conclude that the testimony with regard to Mr. Andrade's statements is simply not sufficient to establish actual confusion.

#### 5. Marketing Channels Used

There *are* genuine issues of material fact as to the similarity of the marketing channels used by Plaintiff and Defendant. No admissible evidence was set forth regarding the marketing channels employed by Defendant.[7]

#### 6. Likely Degree of Purchaser Care

Genuine issues of material fact also exist as to the degree of purchaser care. No properly documented evidence was introduced in support of Plaintiff's assertion that the average purchaser exercises a minimal amount of care in selecting stress-related cards.

#### 7. Defendant's Intent in Selecting the Marks

There are genuine issues of material fact concerning the Defendant's intent in selecting the mark. There is *some* evidence that Defendants intended to duplicate Plaintiff's

---

6. Defendants object to Plaintiff's attempt to introduce the statement of Mr. Andrade on the grounds that said statement is hearsay (Doc. # 23, at 16). However, the Court notes that said statement is *not* being "offered in evidence to prove the truth of the matter asserted", but to establish Mr. Andrade's state of mind. *See* Fed. R.Evid. 801(c). Thus, the Court concludes that the statement of Mr. Andrade does not constitute hearsay.

7. Plaintiff attempted to submit several newspaper articles in support of its contention that the marketing channels used by Plaintiff and Defendant are the same (Doc. # 21, declaration of Andra M. Finkel, Exh. 1). However, Plaintiff fails to comply with Rule 56(e) in that said newspaper articles are not sworn or certified copies.

marks. *First,* the marks are simply too similar for their similarities to be sheer coincidence. *Second,* Plaintiff's counsel did send Defendant a warning letter on July 10, 1985, *before* the dissemination of 200,000 cards on July 19, 1985 (Doc. # 21, Barrios declaration, Exh. 7). However, Defendant has presented evidence to the effect that Defendant itself did not select the text or design for the red card (Doc. # 23, Affidavit of Marvin Kidd, August 27, 1985, ¶ 2) and that Defendant's President did not review Plaintiff's warning letter until after the final shipment of the red card (Doc. # 23, Affidavit of Marvin L. Kidd, Nov. 11, 1985, ¶ 1–3). Thus, a reasonable juror could conclude that Defendant was unaware of any similarities between the two cards.

### 8. The Likelihood of Expansion of the Product Lines

Finally, the Court concludes that the likelihood of product expansion is irrelevant in this case as the products upon which the marks appear are already identical.

### 9. The Likelihood of Confusion as a Matter of Law

■ Despite the open factual questions with regard to several of the foundational elements, the Court finds that it *is* able to conclude as a matter of law that a substantial likelihood of confusion exists. The Court concludes that in this particular case the similarity of the marks and the relatedness of the goods are dispositive. Defendant used marks that are virtually identical to Plaintiff's marks, arranged them in a manner that is identical to Plaintiff's arrangement, and placed them upon the same product (i.e. the stress card) marketed by Plaintiff. The phrase "stress control biofeedback card", the trade dress, and the band logo had come to be associated with Dr. Barrios. There is a very strong likelihood that persons encountering the red card would believe that it originated with Dr. Barrios. Even, assuming *arguendo,* that there is no evidence of actual confusion, that different marketing channels are used, that the likely degree of purchaser care is high, and that Defendant had no

intention of copying Plaintiff's marks, this Court concludes that a strong likelihood of confusion does exist. There are simply too many similarities to allow any other conclusion.

### E. *The Innocent Printer Exception*

■] Before ruling upon Plaintiff's Motion for Partial Summary Judgment, the Court must examine one more issue. Defendant asserts that Defendant ATI is merely an "innocent printer" and that its status as such provides a complete defense under Ohio Rev.Code § 4165.04 (Doc. # 23, at 14). In support of its assertion that Defendant is in fact an innocent printer, Defendant relies upon the testimony of its president, Marvin Kidd, that "Abril supplied all text and art work for the 'Brazilian card', and ATI manufactured the Brazilian card to the specifications of Abril." (Doc. # 23, Affidavit of Marvin Kidd, August 27, 1985, ¶ 2). The Court agrees that a genuine issue of material fact does exist as to Defendant's status as an innocent printer. However, the Court notes that the existence of this question of fact is not dispositive with regard to the *entirety* of Plaintiff's Motion for Partial Summary Judgment.

■ The "innocent printer" exception is one of the areas in which Ohio and federal law diverge. Plaintiffs seek partial summary judgment for trademark infringement under both Ohio Rev.Code § 4165.02(B) *and* 15 U.S.C. § 1125(a).

Under Ohio law, Chapter 4165 does *not* apply to "[p]ublishers, broadcasters, printers, or other persons engaged in the dissemination of printed or pictorial matter through published, broadcasted, or reproduced material without knowledge of its deceptive character." *See* Ohio Rev.Code § 4165.04(B). Thus, if Defendant is indeed an innocent printer, Defendant cannot be held liable under Ohio Rev.Code § 4165.02(B).

As genuine issues of material fact exist concerning Defendant's status as an innocent printer, the Court concludes that Plaintiff's Motion for Partial Summary

**620**

Judgment must be overruled as it pertains to Ohio Rev.Code § 4165.02(B).

An "innocent printer" exception also exists under federal law. Section 1114(2)(a) of Title 15 of the United States Code states:

> Notwithstanding any other provision of this chapter, the remedies given to the owner of the right infringed shall be limited as follows: (a) Where an infringer is engaged solely in the business of printing the mark for others and establishes that he was an innocent infringer the owner of the right infringed shall be entitled as against such infringer only to an injunction against future printing....

It is important to note that Section 1114(2)(a) (unlike Ohio Rev.Code § 4165.04(B)) does not relate to the potential *liability* of a printer. Instead, this statute limits the *relief* which a Court may grant against a printer to an injunction against future printing.

Accordingly, as the Court concludes that under federal law, Defendant's alleged status as an innocent printer is irrelevant to Defendant's *liability*, the Court concludes that Plaintiff's Motion for Partial Summary Judgment must be sustained as it pertains to 15 U.S.C. § 1125(a).

## II. CONCLUSION

To summarize the holdings of the Court:

1. Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant's liability for infringement of Plaintiff's trademarks in the phrase "stress control biofeedback card", the trade dress, and the band logo is overruled as it pertains to Ohio Rev.Code § 4165.02(B).

2. Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant's liability for infringement of Plaintiff's trademarks in the phrase "stress control biofeedback card", the trade dress, and the band logo is sustained as it pertains to 15 U.S.C. § 1125(a).