57 CCPA

**The PROCTER & GAMBLE COMPANY, Appellant,**

v.

**Joseph D. CONWAY, d.b.a. the Certified Chemical and Equipment Co., Appellee.**

**Patent Appeal No. 8231.**

United States Court of Customs and Patent Appeals.

Jan. 22, 1970.

Melville, Strasser, Foster & Hoffman, John W. Melville, Cincinnati, Ohio, for appellant.

Jay M. Cantor, Washington, D. C., for appellee.

Before RICH, Acting Chief Judge, AL-MOND, BALDWIN, and LANE, Judges; and RAO, Chief Judge, sitting by designation.

ALMOND, Judge.

The Procter & Gamble Company appeals from the decision of the Trademark Trial and Appeal Board, 153 USPQ 480, dismissing its opposition to the application of Joseph D. Conway, d. b. a. The Certified Chemical and Equipment Co. to register "MISTER STAIN" for a stain removing compound,[1] alleging continuous use in interstate commerce since March 4, 1964.

Appellant's opposition is predicated on its allegations of prior and continuous use of the registered marks MR. CLEAN for a sudsing cleaner, cleanser and detergent;[2] MR. CLEAR for a windshield

1. Serial No. 198,835 filed July 30, 1964.

2. Reg. No. 658,915, issued February 25, 1958.

cleaner,[3] and a sudsing cleaner, cleanser, and detergent;[4] MR. SHEEN,[5] LADY CLEAN [6] and MRS. CLEAN,[7] the latter three being each for a sudsing cleaner, cleanser, and detergent. The notice of opposition also alleges prior and continuous use of the common-law trademark MASTER-KLEAN for a liquid all-purpose detergent and cleaner.

The record reveals that only appellant-opposer took testimony. The appellee-applicant offered no testimony as to its use of the mark MISTER STAIN and therefore the earliest use upon which it can rely is the filing date of its application, namely, July 30, 1964; thus prior use resides with appellant.

It appears that appellant has, since about 1958, continuously used MR. CLEAN as a trademark for a sudsing cleaner, cleanser and detergent. The product under this mark is sold widely in groceries, supermarkets and similar outlets throughout the United States. The MR. CLEAN cleaner has been extensively advertised through such media as television, newspapers and radio. It has been promoted as a general cleaning preparation and is recommended for a variety of purposes. The MR. CLEAN product went into national distribution in 1959, since which time in excess of one million dollars has been spent yearly in advertising. Sales during this period have exceeded one million cases per year, representing more than twelve million bottles.

The record indicates that appellant and a predecessor have used the mark MASTER-KLEAN for a liquid all-purpose detergent and cleaner since 1943.

We deem it pertinent to note that the record on behalf of appellee discloses that the courtesy titles "Mr." and "Master" as parts of trademarks for cleaning and detergent products have been presumptively used and registered by several others. Of record are such third-party registrations of MR. CAPPS for rust and scale removing preparations; MR. PAUL for hair shampoo; MR. BUBBLE for a powdered detergent used as a bubble bath preparation; MR. MEARS for a glass cleaner and comb and brush cleaner; MISTER JINX for an all-purpose household cleaner and detergent; MR. BUB'L for bubble bath preparations, and MR. DRI for a pulverulent absorbent composition for absorbing oil, grease, and wet spots on surfaces.

■ We agree with the board that the record augmented by the pleaded registrations is sufficient to establish appellant's prior rights in the marks MR. CLEAN, MR. CLEAR, MR. SHEEN, LADY CLEAN, MRS. CLEAN and MASTER-KLEAN, for the cleaning preparations associated therewith. While the competing products of the parties may vary in application, they are, nevertheless, cleaning preparations which would in the ordinary course of trade be sold through the same retail outlets to the same class of purchasers. The sole issue for ultimate resolution, therefore, is whether or not appellee's mark MISTER STAIN so resembles any of appellant's marks that confusion in trade as to the source of the goods sold thereunder is likely to occur.

Appellant-opposer's position below, and in essence here, substantially as quoted in the opinion of the board, is:

The mark MR. CLEAN and each of Opposer's other marks * * * consist of a courtesy title (MR., MRS., Lady, (MASTER)) coupled with a word having a significance associated with cleaning (CLEAN, CLEAR, SHEEN). The combination of a word associated with cleaning with a courtesy title and particularly with a courtesy title MR. or MISTER is wholly and entirely arbitrary in the field of cleaning products and obviously it is

3. Reg. No. 683,773, issued August 18, 1959.

4. Reg. No. 697,194, issued May 3, 1960.

5. Reg. No. 699,967, issued June 21, 1960.

6. Reg. No. 723,976, issued November 14, 1961.

7. Reg. No. 711,333, issued February 14, 1961.

the courtesy title which makes the mark distinctive. It is the dominant portion of the mark.

Thus, * * * the combination of the courtesy title MISTER with the word STAIN, wherein the MISTER portion of the mark is wholly and entirely arbitrary, is calculated to cause confusion in trade and to lead the purchasing public to believe that MISTER STAIN is another product of the manufacturer of MR. CLEAN, MR. CLEAR, MR. SHEEN, MRS. CLEAN, LADY CLEAN and MASTER-KLEAN, or is in some way sponsored by this Opposer.

To countervail appellant's position, appellee advances the argument that MR. CLEAN is a weak mark and therefore is entitled to a limited scope of protection inasmuch as others vending their products in the area of cleaners and detergents have adopted the courtesy title "Mr." or "Mister" as a part of their trademarks; that "clean" is generic or descriptive of the goods and further, to combine the courtesy "Mister" with the word "stain" leaves it far removed from "clean" not only in appearance but also substantially suggests an opposite meaning.

■ In response to the positions asserted by the parties, the board observed that while appellant did not have exclusive title to the courtesy title "Mr." or "Mister" and that "clean" has an obviously descriptive significance, yet by reason of appellant's extensive use and promotion of the mark MR. CLEAN it had become well established as an indication of origin of its cleaning preparation, thereby investing appellant with "a protectable interest therein." While the record reflects a paucity of evidence relating to the extent of the use of the marks MR. CLEAR, MR. SHEEN, LADY CLEAN, MRS. CLEAN and MASTER-KLEAN, the board recognized that proper effect must be accorded to appellant's prior use and/or registrations of these marks. The quandary posed, however, as noted by the board,

is the extent of the protection to be accorded to MR. CLEAN and the quantum of effect to be given to the latter marks. In response to the quandary posed, it was the view of the board, arguendo, in which we share, that by virtue of its ownership and use of the marks of record, appellant has a right to preclude subsequent registration of a mark embracing the courtesy title "Mr." or "Mister" associated with a word conveying a *cleaning* connotation.

The board found that such was not the situation here, holding that the word "stain" has a significance distinctly opposite to that engendered by the word "clean" or "cleaning," and that in view of the obvious differences between "stain" and "clean" and the over-all differences between MISTER STAIN and each of applicant's marks, purchasers were not likely to mistakenly assume that the products sold thereunder would emanate from the same producer.

Under the circumstances here adduced, we think the rationale applied by the board, while sound in principle, was *in vacuo* and productive of an erroneous conclusion.

■ It is true that the words "clean" and "stain" in their usual construction and common acceptation have opposite meanings; "clean" implies absence of "stain" and "stain" connotes that the object affected thereby is not clean. But we think the cardinal consideration here is the impact of the marks *as used* on the basis of conditions and circumstances surrounding the purchase of the goods of the parties in the market place. When used, as here, in connection with cleaning products, we think that the impression to be gained by the average purchaser would be that both words pertain to a state of relative cleanliness. While the word "stain," disassociated from the product, connotes a blemish or a discoloration implying uncleanliness, it is our view that the commercial impression engendered by the mark when applied to a cleaning product would be that the cleaning product will remove the blemish, spot or stain.

We find persuasive and logical the argument of appellant that:

If MISTER STAIN were applied to a product for coloring wood prior to finishing, the mark would mean what it says; but where the mark MISTER STAIN is applied to a cleaning product, it obviously does not mean that the product will produce a stain. The impression created on a purchaser by the name MISTER STAIN as applied to a cleaning product is that it will clean stains or remove stains; and a product specifically for removing stains from rugs or upholstery and called MISTER STAIN could very well be a companion product for a specific purpose to Appellant's general purpose cleaning product MR. CLEAN, particularly since the MR. CLEAN package instructions state that it should not be used on cloth.

 While here we have both aural and optical dissimilarity between "stain" and "clean," such factors are not necessarily controlling on the issue of likelihood of confusion in the market place.

A designation may well be likely to cause purchaser confusion as to the origin of goods because it conveys, as used, the same idea, or stimulates the same mental reaction, or in the ultimate has the same meaning. We think that this record discloses such a situation.

 It is our view that appellee acted at its peril when, with the world to choose from in selecting a name for its goods, it took the courtesy title long in priority used by appellant and coupled it with a word having a relationship to cleaning, or a state of cleanliness, for its trademark. While we are not persuaded that the record presents substantial doubt on the issue of likelihood of confusion, such doubt as there may be should be resolved against the newcomer.

Upon consideration of the authorities relied on and the arguments presented, we are of the opinion that the board committed error in dismissing the opposition.

The decision of the board is, accordingly, reversed.

Reversed.