**LONE STAR MANUFACTURING CO., INC., Appellant,**

v.

**BILL BEASLEY, INC., Appellee.**

Patent Appeal No. 9201.

United States Court of Customs and Patent Appeals,

July 3, 1974.

Wofford, Felsman & Fails, Fort Worth, Tex., attorneys of record, for ap-

pellant; Dennison, Dennison, Townshend & Meserole, Arlington, Va., of counsel.

Howard E. Moore, Dallas, Tex., attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board [1] dismissing an opposition to appellee's application [2] to register FROSTY AIR, the word AIR being disclaimed, for air conditioners for automobiles, trucks, mobile trailers, and refrigerated trailers. Appellant asserts that appellee's mark so resembles appellant's mark for automobile air conditioners, FROSTEMP, used by appellant prior to appellee's asserted first use, as to be likely to cause confusion, mistake, or deception.

Appellant introduced evidence including testimony of its president, Holt Hickman, one of its distributors, James Burton, and documentary exhibits. Appellee took no testimony and thus is restricted to its filing date for first use.

Appellant's documentary exhibits establish priority of use of its mark, FROSTEMP, since as early as 1964. The record shows that its product is marketed throughout a substantial portion of the United States by more than two hundred distributors and several thousand retail outlets. Its sales have amounted in value to approximately $20,000,000 and it has spent about $300,000 in promoting its product.

Mr. Burton, appellant's distributor, testified that on one occasion an owner of a FROSTY AIR air conditioner drove into his FROSTEMP dealership in Ft. Worth, Texas, seeking to have his air conditioner repaired. The air conditioner was still under the FROSTY AIR warranty. Mr. Burton called appellee to request an authorization to perform the repair work and to charge the cost of the repairs to appellee. After the authorization was given, the air conditioner was repaired and the bill was sent to appellee. The signed work order for this repair job constituted appellant's exhibit No. 1.

Mr. Burton further testified that on "five or six, [or] eight" other occasions owners of FROSTY AIR air conditioners came into his Dallas, Texas, service center, which is "three or four blocks" from appellee's place of business, seeking to have their air conditioners serviced. As to those prospective customers, no records were kept. In addition to a sign on his Dallas location reading "Four Seasons of Dallas," there is a six by eight foot FROSTEMP sign on the corner of the building, and Mr. Burton is listed in the Yellow Pages as a FROSTEMP distributor and service center. However, Mr. Burton acknowledged that his Dallas service center will service any brand of automobile air conditioners.

Mr. Hickman, appellant's president, testified that the only specific incident of confusion he was aware of, other than the incident at Mr. Burton's Ft. Worth dealership, occurred in California. Both appellant and appellee purchase the FREON used in their air conditioners from the same supplier, who applies the appropriate mark to the FREON containers. On one occasion, a FROSTEMP customer located in California received FROSTY AIR FREON.

The Trademark Trial and Appeal Board commented upon the testimony of Mr. Burton by stating:

[i]t is clear enough from the testimony of this witness, however, and as stated by opposer in its brief, that

". . . with respect to service and repair work, automobile air condi-

1. 176 USPQ 426 (1973).

2. Application serial No. 341,781, filed October 27, 1969, alleging first use on July 1, 1969.

tioner owners do not exercise discrimination and are not careful in where they stop for warranty or service work. They simply when they have a problem try to get it fixed the quickest and easiest way." [sic]

Such being the case, and in the absence of any testimony by the customer in question, it cannot here be assumed that the taking of their air conditioners to Mr. Burton for service was occasioned by any similarity between the marks rather than to outright carelessness on their part or to some other circumstance.

The board, in dismissing the opposition, held that:

[i]nsofar as the marks are concerned, they differ substantially in both sound and appearance; and while they are similarly suggestive of the nature of the goods to which they are applied, the similarity between them in this respect is considered not to be such as would give rise to a likelihood of confusion or mistake or deception.

### OPINION

After having carefully reviewed the record and the arguments of counsel, we are convinced that the board erred in dismissing the opposition.

■ The parties have argued at length the issue of what is the dominant portion of each mark and have thus attempted to dissect their respective marks. However, we *must* view the marks in their entireties in determining whether a likelihood of confusion exists. Clairol Incorporated v. Roux Laboratories, 442 F.2d 980, 58 CCPA 1170 (1971).

■ Appellee has referred to a number of third party registrations[3] which, appellee submits, indicate that appellant's mark is a weak mark entitled to a narrow scope of protection. While third party registrations are to be considered, they are of little help and do not control our determination of whether the marks are so similar that they are likely to cause confusion, mistake, or deception. Clairol Incorporated v. Roux Laboratories, *supra*.

Appellee further relies upon several prior decisions of this court involving other marks, particularly L. J. Mueller Furnace Co. v. United Conditioning Corp., 222 F.2d 755, 42 CCPA 932 (1955), as being determinative of the instant controversy. However, "[p]rior decisions on different marks used under different circumstances are of little value in deciding a specific issue of likelihood of confusion." Jaquet-Girard, S. A. v. Girard Perregaux & CIE., S.A., 423 F.2d 1395, 57 CCPA 996 (1970).

■ Appellant has proven prior and extensive use of its FROSTEMP mark and shown substantial sales prior to appellee's first use of its mark, FROSTY AIR. The goods are identical, are in direct competition with one another, and are purchased by the same class of purchasers. Although the board correctly found that the marks "are similarly suggestive of the nature of the goods to which they are applied," we further find that the marks, when applied to automobile air conditioners, convey to prospective purchasers the same idea, same mental reaction, and same meaning. Proctor & Gamble Co. v. Conway, 419 F.2d 1332, 57 CCPA 865 (1970).

■■ While lack of evidence of actual confusion or mistake does not preclude a finding of likelihood of confusion, In re Calgon Corp., 435 F.2d 596,

---

3. Strangely enough, two of these marks are FROS–T–Air, Reg. No. 358,978, issued July 26, 1938, and FROS–T–AIRE, Reg. No. 671,549, issued December 23, 1958, both for air conditioning units.

58 CCPA 830 (1971), there is testimony of record here which tends to show a degree of actual confusion and mistake among customers. The degree to which this confusion and mistake have been shown may only be minor; however, appellee had only one place of business and his channels of product distribution were not yet of the size of appellant's. The board's hypothesis as to how the instant incident of customer confusion may have occurred does not negate its existence. Furthermore, any doubts as to the existence of a likelihood of confusion are to be resolved in favor of the prior user.

For the foregoing reasons the decision of the Trademark Trial and Appeal Board is reversed.

Reversed.

MARKEY, Chief Judge, dissents.