**WSM, INCORPORATED,**
**Plaintiff-Appellee,**

v.

**TENNESSEE SALES COMPANY, a General Partnership comprising Bob Beasley and Nathan Davis, Defendant-Appellant.**

**No. 81–5846.**

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1983.

Decided June 17, 1983.

Bob Beasley, pro se.

Francis M. Wentworth, Jr., Nashville, Tenn., L. Lawton Rogers, III (argued), Arlington, Va., for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, and LIVELY, Circuit Judge, and MARKEY,* Chief Circuit Judge.

MARKEY, Chief Judge.

Tennessee Sales Company (TS) appeals from a judgment of the United States District Court for the Middle District of Tennessee holding it liable for trademark infringement and awarding summary judgment to WSM, Inc. (WSM). We affirm.

## Background

WSM owns incontestable federal Registration No. 979,662, issued February 26, 1974 on this mark:

WSM's registration describes the services with which the mark is used as "amusement park services." WSM has also registered the mark in the state of Tennessee for both amusement park services and souvenirs of its amusement park services in Nashville, Tennessee. WSM has used the mark on T-shirt souvenirs of its OPRYLAND U.S.A. amusement park.

TS makes and sells in interstate commerce these T-Shirt transfers:

---

* Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

## NASHVILLE, TENNESSEE

The colors used in the record samples of WSM's mark and TS' transfers are substantially identical.

TS sells its T-shirts with its transfers on them and sells the transfers separately for subsequent application to T-shirts. TS adopted its transfer design after WSM began using its mark and designed the transfer with WSM's mark before it.

TS' transfers and transfer-bearing T-shirts are sold in the same souvenir shops in Nashville in which WSM's souvenirs bearing its mark are sold.

WSM brought this action on August 5, 1980, charging TS with infringement and unfair competition. Judge Wiseman granted summary judgment to WSM on the issue of liability and ordered an accounting. A judgment in the sum of $1,350, representing the profits of TS, was awarded to WSM on July 24, 1981. This appeal followed. Viewing the appeal as frivolous, WSM seeks on appeal an award of attorneys fees.

### Issues

(1) Whether the district court erred in awarding summary judgment to WSM.

(2) Whether the district court abused its discretion in awarding profits to WSM.

(3) Whether WSM is entitled to attorneys fees on this appeal.

### OPINION

#### (1) Summary Judgment

TS says this case is a complicated and detailed trademark infringement action, ill-suited to summary judgment because of the complexity and interdependence of the facts necessary to prove infringement under the Lanham Act. We disagree.

■ Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles. *See Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494 (2d Cir.1962); *Beef/Eater Restaurant, Inc. v. James Burrough, Ltd.,* 398 F.2d 637 (5th Cir.1968). Any other rule would violate Fed.R.Civ.P. 56(c) providing for the grant of summary judgment when "there is no genuine issue of material fact."

■ It is undisputed that "likelihood of confusion" as to source or origin is the appropriate test for determining infringement and was the sole issue before the district court. This court has made clear that likelihood of confusion is a question of law and thus an appropriate issue for summary judgment. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir. 1982). The legal conclusion that confusion is likely must rest on the particular facts of the case, but when all of the material facts have been determined, the ultimate determination of likelihood of confusion lies within the exclusive jurisdiction of the court. *See Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 443–44 (9th Cir.1980).

■ TS presents no genuine issue of fact material to the legal conclusion required in this case. It is undisputed: that the two designs are used on identical, inexpensive goods (T-shirts); that the goods are sold in the same channels of trade (souvenir shops in Nashville); and that the goods are sold to the same classes of purchasers. As is obvious upon observation of the reproductions at the outset of this opinion, WSM's mark and TS' transfer are virtually identical. It is uncontested also that TS knew of WSM's prior use of its mark, and with that mark before it, TS chose to design and adopt a virtual copy.

On those undisputed facts the trial court properly determined that confusion would

be likely.[1]

▪ TS' assertion that its use of the involved design is "functional," i.e., "ornamental" or "decorative," is unavailing. A purely functional item will not qualify for trademark protection. *See In re Honeywell, Inc.,* 532 F.2d 180, 182–83 (Cust. & Pat.App.1976). That an item serves or performs a function does not mean, however, that it may not at the same time be capable of indicating sponsorship or origin where aspects of the item are nonfunctional. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2nd Cir.1979). The district court found that WSM's mark served to indicate source in addition to any "ornamental" function it might also serve. No basis exists for upsetting that finding.

TS' reliance on *International Order of Job's Daughters v. Lindeburg and Company,* 633 F.2d 912 (9th Cir.1980) is misplaced. The court there held that defendant, a jeweler who had for many years with plaintiff's knowledge sold jewelry bearing the registered emblem of Job's Daughters, was not liable for trademark infringement. It based that holding, however, on the merchandising of the emblem solely on the basis of its intrinsic value and not as a designation of origin or sponsorship. The court expressly noted that the emblem would serve as a trademark if "the typical customer . . . also inferred from the insignia that the jewelry was produced, sponsored or endorsed by Job's Daughters." 633 F.2d at 919.

▪ TS' effort to erect a fact issue on the minute differences between its transfer and WSM's mark is without merit. Infringers rarely make absolutely identical copies, and a side-by-side comparison is not the test. *Owens-Illinois Glass Co. v. Clevite Corp.,* 324 F.2d 1010, 51 Cust. & Pat.App. 815 (Cust. & Pat.App.1963). It is sufficient when, as here, one having a general recollection of WSM's mark would be likely on encountering TS' transfer to assume that both emanate from the same source or connected sources.

The district court properly held TS liable for trademark infringement.

## (2) Profits

15 U.S.C. § 1117 provides that the prevailing plaintiff in a trademark infringement case is entitled, subject to the provisions of 15 U.S.C. §§ 1111, 1114, to recover (1) defendant's profits; (2) any damages sustained by plaintiff; and (3) costs of the action.

TS says the district court erred in awarding WSM profits under that section because WSM did not prove wrongful intent as required by 15 U.S.C. § 1114(1)(b).

▪ We disagree. Wrongful intent need not, and ordinarily cannot, be established by direct evidence, but may be inferred from defendant's acts. *O. & W. Thum Co. v. Dickinson,* 245 F. 609 (6th Cir.1917).

> When a defendant, who is aware of the name, mark or other device of the plaintiff, appropriates it without justification, it is conclusively presumed that he intends all injuries attributable to his intentional piracy. The similarity itself may be sufficient evidence. (citations omitted).

R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies,* § 89.2(b) (3d ed. 1969).

▪ Here, TS was aware of WSM's mark, yet with an infinite variety of nonsimilar designs available, it chose a virtually identical design, knowing that it intended to sell that design on identical goods in the same channels of trade as that in which WSM's mark moved. It is reasonable to infer therefrom that TS intended to deceive the public concerning the origin of the goods. The district court thus properly awarded profits to WSM.

---

1. If there were doubt (and there is none), it would be resolved against TS. As a newcomer, it had an affirmative duty to avoid confusion. *Telechron, Inc. v. Telicon Corp.,* 198 F.2d 903 (3d Cir.1952); *Lone Star Mgr. Co. v. Bill Beasley, Inc.,* 498 F.2d 906, 909, 182 USPQ 368, 370 (Cust. & Pat.App.1974).

(3) Attorneys Fees

█ Under Rule 38 of the Federal Rules of Appellate Procedure this court may "award just damages and ... costs to the appellee" if it determines that an appeal is frivolous. Frivolity, like obscenity, is often difficult to define. With courts struggling to remain afloat in a constantly rising sea of litigation, a frivolous appeal can itself be a form of obscenity. Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal.

The present appeal is so lacking in either factual or legal basis as to be frivolous in nature. Application of a Rule 38 penalty involves, however, consideration of the actor responsible for filing the appeal. If the present appeal had been filed by a lawyer it would have constituted a breach of a duty owed the court (and other litigants and taxpaying citizens) by that officer of the court. In that event, we little doubt that an award to appellee of damages in the form of attorneys fees and costs would have been appropriate and forthcoming. TS, however, was represented by one of its partners appearing effectively *pro se*. Untrained in the law and court procedures, the representative of TS cannot be held to the high standards to which members of the bar aspire or should aspire. *Pro se* litigants are not of course beyond the reach of Rule 38. See *Wood v. Santa Barbara Chamber of Commerce*, 699 F.2d 484 (9th Cir.1983). In the present instance, however, and considering all of the circumstances, we decline to apply the penalty authorized by Rule 38 to TS or to its representative partner.