P.T.C. BRANDS, INC. and The Pinkerton Tobacco Company, Plaintiffs,

v.

CONWOOD COMPANY L.P. d/b/a Specialty Products, Defendant.

Civ. A. No. 92–0143–O(S).

United States District Court, W.D. Kentucky, at Owensboro.

March 23, 1995.

William Riley Dexter, Holbrook, Wible, Sullivan & Mountjoy, Owensboro, KY, Joseph Diamante, Darren W. Saunders, Thomas A. Canova, Pennie & Edmonds, New York City, Lisa B. Stiles, Pinkerton Group, Inc., Richmond, VA, for plaintiffs.

Charles J. Kamuf, Rummage, Kamuf, Yewell, Pace & Condon, Owensboro, KY, David J. Kera, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, David L. Simpson, Memphis, TN, for defendant.

### *MEMORANDUM OPINION*

SIMPSON, Chief Judge.

This matter is before the court on motion of the plaintiffs, P.T.C. Brands, Inc. and The Pinkerton Tobacco Company (hereinafter collectively "P.T.C. Brands" for purposes of this opinion), for summary judgment.

On August 30, 1993, this court entered a preliminary injunction, having first made a *de novo* review and having adopted the findings of fact and conclusions of law of the United States Magistrate Judge.

In finding that the plaintiffs had met the standard utilized in this circuit for issuance of a preliminary injunction, the magistrate judge found in pertinent part:

> In sum, as to the likelihood of Pinkerton's success on the merits, the undersigned concludes that Pinkerton has demonstrated such likelihood at least as to the claim brought under 15 U.S.C. Section 1125 for infringement of the RED MAN trade dress. Because the other factors necessary for a preliminary injunction to issue as to that claim are also met, as explained below, the undersigned does not find it necessary to reach the issue of whether Pinkerton has demonstrated a likelihood of success on its claims under 15 U.S.C. Section 1114 or under Kentucky common law.

*P.T.C. Brands, Inc. v. Conwood Co. L.P.,* 28 U.S.P.Q.2d 1895, 1906, 1993 WL 444586 (W.D.Ky.1993). In its motion, P.T.C. Brands seeks summary judgment on all four counts of the complaint, two counts brought under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.,* and two claims under Kentucky common law for trademark infringement and common law unfair competition.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 151–60, 90 S.Ct. 1598, 1605–10, 26 L.Ed.2d 142 (1970); *Felix v. Young,* 536 F.2d 1126, 1134 (6th Cir.1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of

the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

■ The defendant, Conwood Company L.P., d/b/a Specialty Products (hereinafter "Conwood"), contends that the findings of fact and conclusions of law made in determining the appropriateness of preliminary injunctive relief should be accorded little or no weight in deciding this motion for summary judgment, citing *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir.1985). (Defendant's Memorandum at p. 6).

The court noted in *Communications Maintenance*, at 1205, that:

A court must be cautious in adopting findings and conclusions from the preliminary injunction stage in ruling on a motion for summary judgment for two reasons. First, a court's findings of fact and conclusions of law at the preliminary injunction stage are often based on incomplete evidence and a relatively hurried consideration of the issues.... Second, the questions focused on differ [*sic*] in deciding a motion for preliminary injunction and in deciding a motion for summary judgment.

This case was not "hurriedly decided" at the preliminary injunction stage. The parties engaged in discovery prior to the hearing. The United States Magistrate Judge heard testimony and argument of counsel before findings and recommendations were made and preliminary injunctive relief was granted.

We will utilize our previous ruling as a guide in considering the merits of the motion under the more rigorous summary judgment standard. Where we find no reason shown by any party to depart from our previous ruling, we will utilize our earlier findings in this opinion. But we will utilize those findings only if it is shown that no genuine issue of material fact exists, viewing the evidence in the light most favorable to the defendant.

**A**

P.T.C. Brands alleges in this action that Conwood, a tobacco manufacturer and P.T.C. Brands' competitor, deliberately imitated the trade dress of its RED MAN chewing tobacco and the RED MAN trademark.

In July of 1991, Conwood introduced and marketed a private label chewing tobacco called LION'S SHARE sold in a red, green, and white package. In July of 1992, the product's name was changed to RED LEAF and the designation was changed in the distributor's clause from "Food Lion Stores" to the non-identifying designation of "Specialty Products." In April of 1993, the defendant introduced a new package bearing the name MOORE'S RED LEAF and presenting a substantially different appearance from the RED LEAF package. The MOORE'S RED LEAF product was placed with the RED LEAF product on Food Lion store shelves.

P.T.C. Brands contends that Conwood's RED LEAF package intentionally and impermissibly copies its RED MAN trade dress, causes confusion among consumers, and causes injury to P.T.C. Brands because of P.T.C. Brands' inability to control the quality of Conwood's product.

P.T.C. Brands contends that because the new "MOORE'S RED LEAF" product was specifically associated with the confusingly similar RED LEAF, "MOORE'S RED LEAF" is also improperly trading on the success of RED MAN.

The complaint alleges in four counts infringement of federally registered trademarks, 15 U.S.C. § 1114(1) (Count I), false designation of origin and false descriptions and representations, 15 U.S.C. § 1125(a) (Count II), common law trademark infringement (Count III), and common law unfair competition (Count IV).

Title 15, United States Code, Section 1114(1) states, in pertinent part:

Any person who shall, without the consent of the registrant use in commerce any ... colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any goods ... on or in connection with which such use is likely to

cause confusion, or to cause mistake, or to deceive shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Title 15, United States Code, Section 1125(a)(1) states, in pertinent part:

Any person who, on or in connection with any goods ... or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods ... or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act....

Title 15, United States Code, Section 1127 defines "person" and "colorable imitation" as follows:

The term "person" ... under the provisions of this chapter includes a juristic person. The term "juristic person" includes a ... corporation.... The term "colorable imitation" includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive....

In *Esercizio v. Roberts,* 944 F.2d 1235, 1239 (6th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992), the United States Court of Appeals for the Sixth Circuit set out the elements which must be proven to establish a violation of 15 U.S.C. § 1125(a):

1. That the trade dress of P.T.C. Brands package has acquired a "secondary meaning,"
2. That there is a likelihood of confusion based on the similarity between the P.T.C. Brands package and the Conwood package, and
3. That the appropriated features of the P.T.C. Brands' package trade dress are primarily nonfunctional.

Count III of the complaint, a claim of trademark infringement under Kentucky law, appears to be subsumed into Count IV, a claim for common law unfair competition. While this point has not been specifically addressed by the parties, our reading of the cases under Kentucky common law indicates a melding of the two concepts. "The term 'unfair competition,' when used in connection with a trade name or trademark, means simply 'passing off or attempting to pass off upon the public the goods or business of one man as being the goods or business of another.'" *Jackson v. Stephens,* 391 S.W.2d 702, 706 (Ky.1965).

Equity should and will protect the owner of an established business from unfair competition by a newcomer's use of a business name so deceptively similar as to infringe upon the good will and reputation of his business....

"Under Kentucky law a trade name does not have to be identical with another in order to justify a court in enjoining its use. It is sufficient if it is so similar to the earlier adopted trademark as to make it likely that unsuspecting persons would be led to believe that it was the same."

*Jackson,* 391 S.W.2d at 705 and 706.

The common law doctrine of unfair competition has long been recognized and its coverage has been expanded to meet many varying types of business conditions. A fair discussion of the principles involved appears thus in 51 Am.Jur., Trademarks, Trade-names, Etc., section 86 (page 564):

"Unfair competition, as a justiciable wrong under the common law, is a limited concept, although the scope of the doctrine, which has in recent years been expanded in some jurisdictions in varying degrees, cannot be precisely defined. *It is a species of fraud or deceit.* A universally recognized, and the most common, form or mode of unfair competition is the simulation by one person of the name, symbols, or devices employed by a business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership

and thus secure for himself benefits properly belonging to his competitor.

"As stated by some authorities, the essence of the wrong is the sale of one's own goods for those of another person, and it has sometimes been declared that nothing less than conduct tending to pass or 'palm' off one's own merchandise, services, or business as that or those of another will constitute unfair competition."

*Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 137 (Ky.1969).

These claims are all variations on the basic theme of likelihood of confusion of the consumer of these products.

Certain facts do not appear to be in dispute:

1. The defendants admit in their answer that Registration Number 844,874 was issued by the United States Patent and Trademark Office on February 27, 1958 for the trade name RED MAN for chewing tobacco. P.T.C. Brands holds this registration.

2. The defendants admit in their answer that Registration Number 1,120,150 was issued by the United States Patent and Trademark Office on June 12, 1979 for the words RED MAN and "Design of Indian Head." P.T.C. Brands holds this registration.

3. The defendants admit in their answer that Registration Number 1,195,350 was issued by the United States Patent and Trademark Office on May 11, 1992 for a trademark consisting of the words RED MAN and a Design of Indian Head within a frame that is lined for the colors red, green and yellow. P.T.C. Brands holds this registration.

4. It appears undisputed that both P.T.C. Brands and Conwood are engaged in the sale of their products in interstate commerce. Food Lion stores in which their products are sold are located in various states through the southeastern United States.

5. It appears undisputed that the trade dress in issue in this case is nonfunctional. The RED MAN package design is not in any of its aspects "essential to the use or purpose of the article" nor does it "affect the cost or quality of the article." *See Inwood Labora-*

*tories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

P.T.C. Brands must establish that there is a likelihood of confusion of the public based upon the similarity between the RED MAN and RED LEAF marks and trade dress in order to prevail on its claims in this case.

The United States Court of Appeals for the Sixth Circuit has stated:

[I]n determining likelihood of confusion in a Lanham Act case, the court should consider the following factors: strength of the plaintiff's mark; relatedness of the goods; similarity of the marks; evidence of actual confusion; marketing channels used; likely degree of purchaser care; defendant's intent in selecting the mark; and likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).

*Esercizio*, 944 F.2d at 1241–42 (6th Cir.). These factors will be addressed seriatim.

*I*

It is undisputed that the RED MAN trademark and trade dress are strong.

The registered word trademark, RED MAN, and the Indian Head design are well known among consumers of loose leaf chewing tobacco. P.T.C. Brands has used a red, white, and green color scheme on its original RED MAN packages since the early 1900s. The red, green, and white RED MAN package is well known and recognized by consumers and helps to sell the RED MAN product. A 1992 awareness study indicated a total brand awareness of 98% for RED MAN among chewing tobacco consumers. Additionally, RED MAN fared well in Conwood's 1992 switching study. P.T.C. Brands has been a leader in advertising its products over the years. RED MAN is at the top of the loose leaf tobacco market and is frequently the leading brand in the industry.

The annual sales of RED MAN exceed $90 million.

A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the

hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both. *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1264 (6th Cir.1985), citing CALLMANN, UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES, ¶ 20.43 (4th ed. 1983). We find that the RED MAN mark and trade dress are strong.

## II

There is no dispute that the goods are related since they are both loose leaf chewing tobacco products and are competitors.

## III

In evaluating the similarity of the trademarks and the trade dress, the "total image and impression created by the defendant's package on the eye and mind of an ordinary purchaser" must be considered. J. THOMAS McCARTHY, TRADEMARKS AND UNFAIR COMPETITION, § 8.03 (3d ed. 1992).

We have been shown no reason to depart from our earlier evaluation of the similarity of the trademark and trade dress, and we will restate those matters about which there is no genuine issue of material fact in dispute and our conclusions to which we adhere here. Conwood asserts that it has never considered RED MAN and RED LEAF to be similar. It states that P.T.C. Brands does not have an exclusive right to the use of the word "red," that Conwood owned trademarks for RED COON and RED FOX and that other tobacco products also use the word "RED" on their labels. These facts are not material to the analysis of the "total image and impression" created by Conwood's package.

P.T.C. Brands' package combines many different elements. The words RED MAN and the Design of Indian Head and the slogan "AMERICA'S BEST CHEW" are three of the prominent elements which, separately or together, are registered as trademarks. The red, white, and green color scheme is a fourth packaging element, and it is not part of a registered trademark. Whether considered to be inherently distinctive or distinctive as a result of secondary meaning, it is the

package design as a whole, with all of its components, that must be considered. As such, the packages need not be identical.

When assessing the similarity of the packages, the test is not a side by side comparison, but "whether the mark will be confusing to the public when singly presented." *Ferrari SPA Esercizio Fabriche v. Roberts,* 739 F.Supp. 1138, 1145 (E.D.Penn.1990). Where, as here, "the goods in question are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *Squirtco v. Seven–Up Co.,* 628 F.2d 1086 (8th Cir. 1980); *Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920 (10th Cir.1986).

Both packages are dominated by a green rectangular perimeter, which surrounds the brand name in bold red block letters, all on a white background—*cf.* the two package designs in PX 151.

■ Ordinarily color, by itself, is not patentable or subject to trademark protection; however, use of a particular color or color combination may be protected in those instances where coloring has acquired a secondary meaning so that color indicates the source of the product. *Water Gremlin Co. v. Ideal Fishing Float Co., Inc.,* 401 F.Supp. 809 (D.C.Minn.1975). The use of the brand name RED LEAF further heightens the overall similarity to the RED MAN trademark.

■ Conwood's witnesses have admitted that at the time the RED LEAF package was designed and marketed, they knew of no other loose leaf chewing tobacco package which used a red, white, and green color scheme besides RED MAN.

Conwood contends that the allegation of P.T.C. Brands that the packages bear a great similarity to one another is unsubstantiated. There is, however, no dispute of fact relating to the packages' appearance—red, white, and green color scheme; green rectangular perimeter which surrounds the bold red block-lettered brand name on a white background with the brand name which utilizes the term "RED." The overall image is strikingly similar. Moreover, it is undisputed that no other

package resembles the red, white, and green RED MAN package.

## IV

While actual confusion is not an essential factor, "there can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir.1971).

At the preliminary injunction stage of this case, P.T.C. Brands proferred the sworn testimony of five persons who bought the RED LEAF product, but having intended to purchase the RED MAN product. These purchasers who believed that what they were purchasing as RED MAN were actually confused by RED LEAF. Conwood would discount the testimony of the five individuals, stating that they were inattentive shoppers or interested witnesses.

Our analysis of actual confusion must be combined with our conclusions regarding the likely degree of purchaser care.

The purchasers of the parties' products are ordinary consumers. The RED LEAF and RED MAN products are both sold in the Food Lion Supermarket chain. They are inexpensive products costing approximately $1. Such products are considered to be "impulse products" which are purchased without much care. The risk of confusion in inexpensive products is therefore greater than in the sale of products which involve a greater financial commitment. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir.1982); *Conopco, Inc. v. May Department Stores Company*, 784 F.Supp. 648 (E.D.Mo.1992); *Sun–Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186 (5th Cir.1981); *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir.1986).

Conwood does not dispute that as a general rule, purchasers of impulse products do not carefully inspect such products and retain only general recollections concerning the appearances of these products. We therefore find that Conwood's contention that the confused consumers are inattentive shoppers is consistent with our conclusions regarding likely degree of purchaser care and does not create a genuine issue of material fact with respect to the evidence of actual confusion.

Conwood notes that neither Food Lion nor Conwood received any reports of confusion from consumers during the time LION'S SHARE was being sold. Conwood makes no such representation with respect to RED LEAF.

Donald Marsh, a product distributor for P.T.C. Brands in North Carolina, discovered LION'S SHARE, the predecessor to RED LEAF, on the shelves in a Food Lion store. He found LION'S SHARE in the RED MAN shelf space in a store in Charlotte. He inquired of the store manager and the Key Accounts Manager at P.T.C. Brands whether it was a P.T.C. Brands product because he stated that it looked like a RED MAN product. While Conwood notes that Marsh is an interested witness in that he is an employee of P.T.C. Brands, we do not find that the truthfulness of his testimony is in question or is in any way contradicted by Conwood. A number of the witnesses for P.T.C. Brands stated that they similarly believed that RED LEAF was associated with RED MAN.

We find that the evidence demonstrates that the consumer witnesses did not focus on the detail of the packages when making their purchases. It was their impression that they were purchasing RED MAN or a RED MAN-related product, but in fact purchased the Conwood product.

P.T.C. Brands also commissioned a consumer survey which revealed that 35% of the respondents believed that RED LEAF either was RED MAN or that RED LEAF was sponsored by or associated with RED MAN. Conwood has called into question the validity of the study, arguing that the involvement of numerous subcontractors in the field made the accuracy of the data collected somewhat dubious.

The magistrate judge did not include in his findings of fact an evaluation of this evidence or an assessment of the weight which the evidence should be afforded. In determining the likelihood of success on the merits, the magistrate judge merely indicated that this evidence had been adduced for purposes of

the motion for preliminary injunction. This survey along with the other evidence before him was found by the magistrate judge to establish a likelihood that P.T.C. Brands would succeed on the merits of its case. The court accepted the findings and conclusions of the magistrate judge as written with respect to the injunction issue.

The survey is offered again by P.T.C. Brands as evidence in support of its motion for summary judgment. Insofar as the validity of this survey is questioned, we will disregard it for purposes of our summary judgment analysis. We have already found some evidence of actual confusion, other than the survey evidence, although evidence of actual confusion is not necessary proof. *World Carpets, Inc.* 438 F.2d at 489.

## V

With respect to the marketing channels used, we noted earlier in this opinion that both the P.T.C. Brands and Conwood products are sold in the Food Lion Supermarket chain and are direct competitors. RED LEAF is sold only in Food Lion stores. Food Lion is P.T.C. Brands' second largest customer and represents a significant portion of the of the RED MAN distribution.

P.T.C. Brands has promoted its RED MAN chewing tobacco product since the early 1900s and has worked to foster RED MAN's success in the market, strong reputation, and brand recognition. By contrast, Conwood has expended no money to advertise or promote RED LEAF or LION'S SHARE.

Although no advertising or promotion has been done by Conwood, the LION'S SHARE/RED LEAF private label brand has thrived. Since its introduction into the marketplace, sales have approached $1 million. RED LEAF has obtained a market share as high as 4.5% in some regions. The LION'S SHARE/RED LEAF product is Conwood's sixth best seller of its approximately fifteen brands.

Conwood has identified certain other factors which may account for the private brand's success: lower price, favorable shelf placement, and favorable attitude toward private label brands. While these may be factors which operate favorably for the product, they are merely additions to the calculus. The fact remains that, without any advertising or promotion, the only way in which such a product is called to the attention of the public is by its packaging. If the package is given prominence and is competitively priced, all the better for it. John S. Wilson, Jr. noted, however, the importance of a good-looking package to entice the consumer to try the product one time, and the fact that the package affects the consumer's initial perception of the quality of the product.

For purposes of this analysis, we need not exclude other possible factors for the private brand's success. Rather, we must evaluate the undisputed evidence as a whole and determine whether, as a matter of law, there is a likelihood of confusion between the two products. The evidence offered by Conwood, then, does not contradict the evidence that the introduction of LION'S SHARE/RED LEAF to the public was made through its package presentation only, as the product was not advertised.

We find that there is no genuine issue of material fact with respect to the method or channels utilized in marketing the RED MAN and LION'S SHARE/RED LEAF products. Both products appeal to and are distributed in the same market. RED MAN is an actively promoted product with a substantial reputation and strong image in the market. The initial foray of the unknown LION'S SHARE/RED LEAF into the marketplace was made on the appearance of the product alone.

## VI

There are certain undisputed facts relating to Conwood's intent in adopting the LION'S SHARE and RED LEAF packages.

Both Conwood and Conwood's designer, the Archer Malmo Advertising Agency, were familiar with the RED MAN regular package.

The sequence of events surrounding the development of the private label product is undisputed:

In August or September of 1990, Food Lion's tobacco buyer, Rob Shivers, solicited bids for a private brand of loose leaf chewing tobacco from both Conwood and P.T.C. Brands. Conwood submitted a bid; P.T.C. Brands did not.

In January of 1991, Shivers informed S.T. Stokes, Conwood's Southeast Regional Sales Manager, that the buying committee for Food Lion had accepted Conwood's proposal and asked Conwood for samples of the product so Food Lion could evaluate the quality. After the buying committee gave its approval, Shivers asked Stokes to present the committee with a list of potential names for the private brand.

From a list of thirty-one potential names for the product, Food Lion initially selected OLD DAYS and FARMER'S PRIDE. The job of designing composites with the name OLD DAYS was given to Archer Malmo's art director, Charles Kenny. As a matter of routine before beginning a job, Kenny reviewed the packages of various competitive brands to get a feel for the market.

For one reason or another, the names OLD DAYS and FARMER'S PRIDE were abandoned. Food Lion then indicated that it was interested in the name LION'S SHARE. Kenny then passed the design project on to Clarence Lamar Caldwell to work with different type styles for the LION'S SHARE composite. He was instructed to work only with the type styles and not the rectangular perimeter designs which had been created for FARMER'S PRIDE. The colors of the FARMER'S PRIDE composites upon which the LION'S SHARE composites were based were green, red, ocher, and white. The composite which was ultimately selected for LION'S SHARE was a green perimeter and red block lettering on a white background.

In September of 1991, Food Lion requested a change in the distribution clause. Conwood suggested changing it to "Specialty Products" instead of either Food Lion or Conwood's name.

In January or February of 1992, Food Lion informed Conwood that it wanted to change the name of LION'S SHARE and asked Conwood to provide a new list of names. Conwood provided a list of twenty-three names. Among them was the name RED LEAF which was inserted in place of LION'S SHARE on the composite. Joe Ballard was given the project at Archer Malmo. He also created a number of alternative designs. Conwood forwarded the design with the name change only. The alternative designs were not forwarded to Food Lion. The design was accepted and the change was implemented.

We find, based upon the foregoing sequence of events, that Conwood and Archer Malmo were aware of the RED MAN packaging and understood that there were other designs and colors which could be used. Wholly dissimilar composites were in fact created. Kenny admitted that he reviewed the RED MAN package when he began the design process.

The color scheme and design similar to RED MAN was carried through the various package composites. When alternatives were created for the RED LEAF name by Joe Ballard, they were not submitted for consideration by Food Lion. Conwood chose not to provide them.

Conwood has not proffered a credible explanation for the marked similarity between these directly competitive products. Courts have found that a failure to address the evidence and proffer a credible explanation creates a presumption that the defendant acted in bad faith. *See Bausch & Lomb, Inc. v. Nevitt Sales Corp.,* 810 F.Supp. 466, 475 (W.D.N.Y.1993) (that defendant developed a mark both similar in sound and appearance to plaintiff's "and its failure to offer an innocent explanation for its decision both work to create a strong presumption that defendant acted in bad faith in adopting its [mark]"). *See also WSM, Inc. v. Tennessee Sales Co.,* 709 F.2d 1084 (6th Cir.1983) (when defendant was aware of plaintiff's mark, yet with an infinity of non-similar designs available chose a very similar design for identical goods, it is reasonable to infer an intent to deceive).

The original designer for the private brand package reviewed the packages of the competitors. The ultimate forms of the package, the LION'S SHARE and RED LEAF packages, possess virtually the same color scheme

and design as the competitor's RED MAN package. The most compelling evidence of Conwood's bad faith is the perpetuation of the color scheme and design from the product's inception and Conwood's decision, in the face of a name change adding further similarity with the competitor's product, to forego providing Food Lion with the design alternatives which had been created and which would have steered Conwood clear of the RED MAN package.

Conwood has identified certain statements that it contends create an issue of fact with respect to its intent. First, it notes that Shivers stated "In no way" or "No sir" when asked whether Food Lion's buying committee selected the red, white, and green package to imitate or knock off any other chewing tobacco package. This statement relates to Food Lion and therefore has no bearing on Conwood's intent. Second, Conwood notes that (1) S.T. Stokes responded "no" when asked if any thought was given to RED MAN during the development of the private label brand and that (2) Cothran agreed that no one considered any similarities between the private label brand's packaging and P.T.C. Brand's packaging. While this testimony might be true, to the best of the knowledge of these witnesses, these statements are clearly factually untrue inasmuch as the initial designer has stated that he reviewed the packaging of the competitors to get a feel for the market prior to beginning the project. Further, Conwood has admitted that it closely monitors its competitor's products.

### VII

The parties have not presented any evidence or argument relating to likelihood of expansion of the product lines. We will therefore make no findings as to this factor.

### B

We find that there is no genuine issue of material fact which would preclude summary judgment as to Conwood's change of the product's packaging from RED LEAF to MOORE'S RED LEAF.

The MOORE'S RED LEAF package is completely dissimilar to the RED LEAF package except for the words "RED" and "LEAF."

The parties agree that the term "Red Leaf" is in the public domain. Conwood has obtained a registration of the mark "MOORE'S RED LEAF" which contains the limitation that "RED LEAF" alone is not eligible for trademark protection.

The MOORE'S RED LEAF packages replaced the RED LEAF packages in the Food Lion stores. These packages bear a dark brown background, a large red leaf in the center upon which MOORE'S RED LEAF is written. The word MOORE'S is written in script in a smaller type at the top, followed by RED LEAF in large letters, upper and lower case, in white. There is also a black shadow effect made from the white letters to make them appear to stand up off the surface of the leaf design.

Cothran responded when questioned whether Conwood wanted the words "Red Leaf" to be prominent that "We certainly wanted the names to show, yes."

### CONCLUSION

As noted by the United States Court of Appeals for the Sixth Circuit,

Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles. *See Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494 (2d Cir.1962); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.,* 398 F.2d 637 (5th Cir.1968). Any other rule would violate Fed.R.Civ.P. 56(c) providing for the grant of summary judgment when "there is no genuine issue of material fact."

It is undisputed that "likelihood of confusion" as to source or origin is the appropriate test for determining infringement and was the sole issue before the district court. This court has made clear that likelihood of confusion is a question of law and thus an appropriate issue for summary judgment. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982). The legal conclusion that confusion is likely must rest on the particular facts of the

case, but when all of the material facts have been determined, the ultimate determination of likelihood of confusion lies within the exclusive jurisdiction of the court. *See Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.* 616 F.2d 440, 443–44 (9th Cir.1980).

*WSM, Incorporated v. Tennessee Sales Company,* 709 F.2d 1084, 1086 (6th Cir.1983).

We conclude that the undisputed material facts establish that P.T.C. Brands is entitled to judgment as a matter of law. We find that these facts establish a likelihood of confusion as to the source or origin of Conwood's product in its form as LION'S SHARE and RED LEAF. We would further note, as did the Sixth Circuit in *WSM, Inc.,* 709 F.2d at 1087 n. 1, that:

> If there were doubt (and there is none), it would be resolved against [the defendant, in this case Conwood]. As a newcomer, it had an affirmative duty to avoid confusion. *Telechron, Inc. v. Telicon Corp.,* 198 F.2d 903 (3d Cir.1952); *Lone Star Mfg. Co. v. Bill Beasley, Inc.,* 498 F.2d 906, 909, 182 U.S.P.Q. 368, 370 (Cust. & Pat.App.1974).

The evidence establishing the remaining the remaining elements which must be proven to obtain summary judgment on the four claims of the complaint are undisputed.

■ With respect to MOORE'S RED LEAF, we find that there is no genuine issue of material fact with respect to the change from RED LEAF to MOORE'S RED LEAF, but we do not find that P.T.C. Brands is entitled to summary judgment as a matter of law.

It appears that the claim that P.T.C. Brands has made with respect to the MOORE'S RED LEAF package is not that the package is confusingly similar but that it afforded Conwood some continuity in changing from a confusing package to one which is not confusing to the consumer, and continues to derive the benefit of the RED LEAF sales. The cases cited by P.T.C. Brands do not necessarily prohibit such continuity from the old package to the new. Rather, the main premise of the cases is that one who is found to have engaged in unfair competition

should be required to keep a safe distance away from the margin line of confusion.

In *Chevron Chemical Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 705 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982), the Court of Appeals for the Fifth Circuit noted that "an injunction can be therapeutic as well as protective. In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable. [citations omitted]."

We are not convinced, on this record, that the court should fashion such a remedy here for use of the MOORE'S RED LEAF package.

For the reasons set forth hereinabove, the motion of the plaintiffs, P.T.C. Brands, Inc. and the Pinkerton Tobacco Company, for summary judgment will be granted in part and denied in part by separate order.

### ORDER

**IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Conwood Company L.P., d/b/a Specialty Products, for leave to file supplemental citation (DN 145) is **GRANTED**; and the request of the plaintiffs, P.T.C. Brands, Inc. and the Pinkerton Tobacco Company, for Fed.R.Civ.P. 11(c) sanctions (DN 148) is **DENIED**.

### ORDER

Motion having been made, and for the reasons set forth in the memorandum opinion entered herein this date, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiffs, P.T.C. Brands, Inc. and the Pinkerton Tobacco Company, for summary judgment is **GRANTED** as to claims I, II, III, and IV of the complaint, except with respect to the MOORE'S RED LEAF package as to which summary judgment is **DENIED**.

### ORDER

Due to the addition of Judge Thomas B. Russell to the court, the docket for the Western District was realigned by order dated October 20, 1994.

The above captioned action was not transferred to the docket of Judge Russell at that time due to the pendency of a summary judgment motion. That motion has now been resolved by memorandum opinion and order entered by this judge on March 22, 1995.

**IT IS HEREBY ORDERED** that this matter is **TRANSFERRED** to the docket of Judge Thomas B. Russell for all further proceedings.